## Duross v. Aetna Life and Casualty Insurance Company

*Robert L. Seigle,* for plaintiff.

*Marjorie G. Marinoff, Stephen E. Bozzo,* for defendant.

GELFAND, *J.,* And now, this July 27, 1981, upon consideration of the petition for wage loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act filed by Claudia Duross (hereinafter referred to as petitioner), the answer and new matter of Aetna Life & Casualty Insurance Company (hereinafter referred to as respondent) together with petitioner's answer to new matter, memoranda of law and oral argument, it is hereby ordered and decreed that the said petition is denied without prejudice to the right of petitioner to petition this court for work loss benefits after submission to respondent of reasonable proof of loss.

It is further ordered and decreed that attorney's fees, interest and costs are denied.

The facts indicate that on August 1, 1978, petitioner's husband was killed when the automobile which he was driving struck a pole. At the time of the accident, the deceased held an insurance policy issued to him by respondent which provided coverage in accordance with the Pennsylvania No-fault Motor Vehicle Insurance Act.[1]

---

1. Act of July 17, 1974, P.L. 489, 40 P.S. § 1009.101 et seq. (Supp. 1980 - 1981) [hereinafter referred to as the act or the No-fault Act]

Petitioner applied for work loss benefits[2] pursuant to decedent's policy on the basis of Heffner v. Allstate Insurance Company, 265 Pa. Super. 181, 401 A.2d 1160 (1979), aff'd 491 Pa. 447, 421 A.2d 629 (1980), which held that the survivor of a deceased victim of a motor vehicle accident is entitled to work loss benefits.

Respondent rejected petitioner's request by letter dated November 14, 1980 on the ground that Heffner is not retroactive and that it would pay work loss benefits to survivors only in those cases where the decedent died after the date of the Supreme Court's decision.

Thereafter, petitioner filed the petition herein requesting work loss benefits and interest, as well as attorney's fees and costs.

Oral argument was heard thereon, at which time the following issues were raised:

(1) Whether Heffner applies retroactively; and

(2) Whether petitioner is entitled to attorney's fees and costs.

## THE RETROACTIVITY OF HEFFNER

The general rule in this Commonwealth is that "the construction placed upon a statute by the courts becomes a part of the act, *from the very be-*

---

2. Section 103 of the No-fault Act defines work loss as follows:

"Work Loss" means:

A. loss of gross income as calculated pursuant to the provisions of section 205 of the act; and

B. reasonable expenses of a victim for hiring a substitute to perform self-employment services thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income." Section 202(b) imposes a $15,000 ceiling on work loss benefits.

*ginning;* and, when former decisions are overruled, the reconsidered pronouncement becomes the law of the statute from the date of its enactment." Buradis v. General Cement Products Co.,[3] 159 Pa. Super. 501, 504, 48 A.2d 883, 885 (1946) (Citations omitted), aff'd, 356 Pa. 349, 52 A.2d 205 (1947) (per curiam).

Recently, our Superior Court in Daniels v. State Farm Mutual Automobile Insurance Company, 283 Pa.Super. 336, 421 A.2d 1284 (1980) echoed the *Buradis* rule in deciding whether to remand the case to permit a claim under Heffner, stating:

"Heffner did not change the law; it rather decided an issue of statutory construction not previously decided by an appellate court. Such an interpretation of legislative intent is regarded as part of a statute from the time the statute was enacted. Harry C. Erb, Inc. v. Schell Construction Co., Inc., 206 Pa. Super. 388, 213 A.2d 383 (1965); Buradis v. General Cement Products, 356 Pa. 349, 52 A.2d (1947)." Slip Op. at 8.

Generally, this rule applies "[u]nless vested rights are affected." Kuchinic v. McCrory, 422 Pa. 620, 625, 222 A.2d 897, 900 (1966). Accordingly, our inquiry is limited to a determination of whether vested rights have been affected.

Respondent contends that the aforementioned exception is applicable in the herein matter since it based its premium structure and its claims practice

3. The Buradis rule has been cited with approval in several more recent cases including Ettinger v. Central Penn National Bank, No. 80-1170 (3rd Cir. November 7, 1980); Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897 (1966); Harry C. Erb, Inc. v. Shell Construction Co., 206 Pa. Super. 388, 389, 213 A.2d 383 (1965).

upon the premise that work loss benefits were not available to survivors of deceased victims.

Specifically, respondent argues that its insurance rates were not designed to take into account the recovery of work loss benefits by survivors of deceased victims, since it relied on previous trial court decisions denying work loss benefits to survivors as well as a tacit understanding among numerous components of the insurance industry and the Pennsylvania Department of Insurance to the same effect.

Respondent further argues that had it based its rates on the premise that survivors of deceased victims could receive work loss benefits, it would have charged its insureds approximately $3,500,000 in additional PIP premiums.

Finally, in a supporting affidavit submitted to buttress its argument, respondent, through its actuary, indicated that rate making can only be utilized on a prospective basis, and that future rate filings may not be utilized to recoup losses. However, we are not persuaded that respondent had a "vested right".

It is well-settled that the right must be absolute and unconditional and a mere expectation of future benefit based upon anticipated continuance of existing laws does not constitute a vested right.[4]

In the matter herein, petitioner merely relied on a misconstruction of the law, as well as four common pleas court decisions,[5] the first of which was imme-

---

4. In re Crawford's Estate, 362 Pa. 458, 67 A.2d 124 (1947). See also Catherwood Trust, 405 Pa. 61, 173 A.2d 86 (1961); Schantz Estate, 33 D. & C. 2d 525 (1964)

5. Pontius v. United States Fidelity and Guaranty Co., 100 Dauphin Co. 133 (C.P. 1978); Winegeart v. State Farm Mutual Automobile Insurance Co., no. 77-5-3437 (C.P. York Cty., April 4, 1978 ); Anderson v. Nationwide Insurance Co., no. 76-19366 (C.P. Montgomery Cty., February 24, 1978); Heffner v. Allstate Insurance Co., no. 3406, November term 1976 (C.P. Phila. Co., Nov. 28, 1977).

diately appealed.[6]

Accordingly, we conclude that the vested rights exception does not apply herein; and Heffner will be given full effect.

Recently, our Superior Court has applied the retroactivity test enunciated by the United States Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971)[7] as set forth below:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied (citation omitted) or by deciding an issue of first impression whose resolution was not clearly foreshadowed (citation omitted). Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question its purpose and effect and whether retrospective operation will further or retard its operation.' (Citation omitted.) Finally, we have weighed the inequity im-

---

6. Heffner v. Allstate Insurance Co., no. 3406, November term, 1976 (C.P. Philadelphia, November 28, 1977).

7. Gibson v. Commonwealth, 490 Pa. 156, 415 A.2d 80 (1980); Schreiber v. Republic Intermodal Corp., 473 Pa. 614, 375 A.2d 1285 (1977).

In Gibson, the Supreme Court held that its abrogation of sovereign immunity in Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709 (1978) would be applied retrospectively to those claims which accrued prior to the statutory bar on sovereign immunity.

In Schreiber, the Supreme Court held that Jonnet v. Dollar Savings Bank, 530 F.2d 1123 (3d Cir. 1976), which held that Pennsylvania Rules of Civil Procedure relating to writs of foreign attachment are unconstitutional did not establish a new principle of law which might be applied prospectively only.

posed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding 'injustice or hardship' by a holding of nonretroactivity." (Citation omitted.) 404 U.S. at 106-107.

Upon consideration of the above test, it is our view that Heffner may not be precluded from retroactive application.

In regard to the first factor mentioned, respondent argues that the Heffner decision established a new principle of law by overruling prior judicial precedent in addition to the well-settled understanding and interpretation of the No-fault Act by the insurance companies and the Pennsylvania Insurance Commissioner.

Our examination of Heffner indicates that it did not establish a new principle of law. As the Daniels court stated:

"[o]ur decision in Heffner did not create a new right to work loss benefits. That right existed all along. Contrary to appellee's suggestion, in Heffner we did not redefine survivor's loss; we simply analyzed the distinctions between work loss and survivor's loss, noting that in the case of a deceased victim the work loss claim is comparable to a survival action and the survivor's loss claim is comparable to a wrongful death action." Daniels, slip op. at 8

Hence, it is our view that Heffner did not overrule a clear past precedent or decide an issue in a manner which was not clearly foreshadowed. On the contrary, we find that the court's decision in Heffner was clearly consistent with the legislative purpose of the No-fault Act, and that there is no basis to preclude its retroactivity.

In addition, we are not convinced that the prior history of the issue involved herein is such that ret-

roactive operation of the Heffner decision will retard the purpose of the No-fault Act. On the contrary, it is our view that to do so would comply with the stated purpose of the said act.

Further, we do not believe that retroactive application of Heffner would impose such inequitable results upon respondent as to preclude same. The very nature of respondent's business is fraught with risk and carries with it the possibility of unanticipated expenditure. In addition, the fact that respondent relied upon departmental administrators and its own actuaries to make a legal determination which it thereafter pursued can in no way bind this court from finding otherwise, even if such result is unexpected.

Although we hold that Heffner is retroactive, we are nevertheless constrained to deny the herein petition because nowhere in the pleadings is there any indication that reasonable proof of work loss was ever submitted to respondent as required by the act.

## ATTORNEY'S FEES, COSTS AND INTEREST

Section 107(3) of the No-fault Act provides as follows:

"If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim. . . without reasonable foundation, the court may award the claimant's attorney a reasonable fee based on actual time expended."

In Hayes v. Erie Insurance Exchange, 261 Pa. Super. 171, 395 A.2d 1370 (1978), aff'd 493 Pa. 150, 425 A.2d 419 (1981), our Superior Court affirmed the trial court's refusal to award attorney's fees because the issue raised therein was non-frivo-

lous and novel, and the insurer did not exercise bad faith.

It is our view that the issue raised herein is similarly novel, and there is no indication that the insurer acted in bad faith.

Accordingly, attorney's fees and costs are denied.

Interest on any overdue benefits is denied inasmuch as the pleadings do not indicate that reasonable proof of loss was ever submitted to the respondent.

Accordingly, although we do herein deny petitioner's request for work loss benefits, we do so without prejudice to the right of petitioner to seek same from this court together with interest, costs and attorney's fees, in the event same are not paid by respondent after submission of reasonable proof of loss in accordance with the terms of the Pennsylvania No-fault Motor Vehicle Insurance Act.